IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| AUDREY MICHELE PONDER BASEHEART,<br><br>          Plaintiff,<br><br>v.<br><br>HUDDLE HOUSE, INC.<br><br>          Defendant. | Civil Action<br>File No.: 6:21-CV-01018<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

COMES NOW, Plaintiff, Audrey Michele Ponder Baseheart ("Baseheart" or "Plaintiff"), by and through undersigned counsel, and files this Complaint against Defendant, Huddle House, Inc. ("Huddle House" or "Defendant"), respectfully alleging as follows:

## INTRODUCTION

1. This action arises in the context of a former employment relationship between Plaintiff and Defendant. Plaintiff was discriminatorily terminated by Defendant for pretextual reasons in violation of the Age Discrimination in Employment Act of 1947, as amended, 29 U.S.C. § 623 *et seq*. ("ADEA").

2. Plaintiff was additionally subjected to retaliation by Defendant for raising concerns of illegal employment practices in violation of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102.

## JURISDICTION AND VENUE

3. Plaintiff's claims present federal questions over which the court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 623. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper pursuant to 29 U.S.C. § 623 and pursuant to 28 U.S.C. 1391 (b) and (c), as every act of which Plaintiff complains occurred in the Orlando Division of the United States District Court for the Middle District of Florida.

5. Plaintiff is a resident of the State of Tennessee and submits herself to the jurisdiction of this Court.

6. Huddle House is a Georgia For-Profit Corporation with its principal place of business located at 5901-B Peachtree Dunwoody Road, NE, Atlanta, Georgia 30328. Huddle House may be served through its registered agent in Florida to wit: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

7. At all times relevant to Plaintiff's claims, Defendant employed 20 or more employees for each working day in at least 20 or more calendar weeks, including Plaintiff.

8. Plaintiff has satisfied all conditions precedent to filing this action, including filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and receiving her Notice of Right

to Sue ("Notice") within ninety (90) days of the filing of this action. A true and correct copy of Plaintiff's Notice is attached hereto as Exhibit "A."

## FACTUAL ALLEGATIONS

9. Plaintiff is a sixty-four (64) year old woman that first became employed by Perkins Restaurants, LLC ("Perkins") in or about October 23, 2006 as a Human Resources Manager in its Orlando, Florida office.

10. Plaintiff worked out of the Orlando office throughout her employment with Perkins and her subsequent employment with Huddle House, when Huddle House purchased Perkins.

11. Plaintiff was promoted to Senior Human Resources Manager in April 2008. At all times material to Plaintiff's employment, Plaintiff performed her duties diligently and accordance with standards and procedures set forth by the company.

12. In or about August 2019, Perkins was purchased by Huddle House and Michael Abt ("Abt"), Jim Frank ("Frank"), and Marilyn Leister ("Leister") were in charge of the transition that Huddle House was undertaking after its purchase of Perkins.

13. On or about September 12, 2019, Mr. Abt sent company-wide email correspondence informing employees that Huddle House and Perkins would be combining and assured the employees that there would be fairness in the job offer process and candid discussions with employees who were interested in joining the

Huddle House team in its Atlanta Offices. A true and correct copy of Mr. Abt's email is attached hereto as Exhibit "B."

14. Mr. Abt's September 12, 2019, correspondence further assured employees that the Huddle House executive team would meet with each employee personally to better understand each employee's history and contributions to Perkins and to ascertain whether the employee was interested in joining the Huddle House team in Atlanta. *See* Exhibit "B."

15. On or about September 18, 2019, Mr. Abt held a team meeting at Huddle House's Memphis office with all support personnel from the Minneapolis and Orlando offices via conference call wherein Mr. Abt stated that the full transition from Perkins to Huddle House would take approximately six (6) to eight (8) months.

16. Mr. Abt further stated that the entirety of the operations would eventually be based out of Atlanta and that Huddle House would be offering relocation assistance to its employees. In this conference call, Mr. Abt led each employee to believe that their willingness to relocate to Atlanta would be considered in Huddle House's job offer consideration.

17. Later, in September 2019, Plaintiff met with her supervisor, Jackie Aho ("Aho"), who informed Plaintiff that Ms. Leister, Mr. Abt, and other members of Huddle House's executive team would be visiting the Minneapolis offices to meet with employees and would be scheduling phone conferences with Plaintiff, Melissa

4

Bending ("Bending"), Craig Story ("Story"), and Nicole Kunza ("Kunza").On or about September 28, 2019, Plaintiff was informed that the Huddle House executive team scheduled phone calls with Ms. Bending, Mr. Story, and Ms. Kunza, yet no one from Huddle House's Executive team reached out to Plaintiff to schedule a phone conference.

18. When Plaintiff informed Ms. Aho that she was concerned that she was not offered a phone conference with Mr. Abt like her younger colleagues, Ms. Aho stated that she would try to determine the reason Plaintiff was not scheduled. Ms. Aho later informed Plaintiff that she believed Plaintiff's name had been misspelled and she would ensure that Plaintiff was scheduled for a call with the executive team.

19. On October 7, 2019, Ms. Aho sent email correspondence to the Huddle House executive team outlining Plaintiff's specific job duties and expertise and noted that Ms. Bending, who had already been interviewed, was Plaintiff's understudy. Mr. Abt and Ms. Leister were made aware that Plaintiff was far more experienced and qualified in human resources than Ms. Bending prior to scheduling Plaintiff's phone conference with Huddle House's executive team.

20. On October 9, 2019, Plaintiff had a phone conference with Ms. Leister which was less than forty-five (45) minutes in duration. Throughout Plaintiff's conversation with Ms. Leister, she seemed preoccupied and disinterested in anything that Plaintiff had to say.

21. Ms. Leister made no attempt to build rapport with Plaintiff during her call, and despite being fully apprised of Plaintiff's knowledge and experience in human resources, Ms. Leister only asked Plaintiff one knowledge-based question. It was apparent by Plaintiff's conversation with Ms. Leister that she had no interest or intent to give Plaintiff fair consideration.

22. On October 10, 2019, Plaintiff had a phone conference with Mr. Abt which last approximately forty-five (45) minutes. Plaintiff made it very clear to Mr. Abt that she was ready and willing to move to Atlanta to continue to be an asset in the Huddle House's human resources department. It was apparent from Mr. Abt's demeanor at the end of the phone interview that this was simply a formality and the decision to hire Plaintiff's much younger and inexperienced understudy had already been made.

23. During Plaintiff's phone interview with Mr. Abt, she further explained that she believed the culture of the company moving forward could be more inclusive and less negative for its employees. Plaintiff further recommended that Mr. Abt have a one-on-one conversation with each of the regional managers to allow Mr. Abt to learn about each regional manager's previous experiences working with Plaintiff to further validate her experience and expertise.

24. Mr. Abt responded to Plaintiff's feedback stating that he did not believe the company was broken and further led the Plaintiff to believe that there would be minimal personnel changes in Huddle House's acquisition of Perkins.

25. On or about October 19, 2019, plaintiff received an email with a letter attached stating that Plaintiff would no longer have a job with the company as of December 31, 2019, and that her salary would be decreased for the remainder of her employment. A true and correct copy of Plaintiff's termination letter is attached hereto as Exhibit "C."

26. Although Plaintiff's salary decreased was corrected after Plaintiff complained to Ms. Aho, Plaintiff's employment was still set to be terminated at the end of 2019.

27. When the news of Plaintiff's termination became known, a regional manager commented that at Plaintiff's age, she did not fit the company's "glamour shot image."

28. On the same day, Plaintiff was contacted by multiple colleagues who were concerned about the threat of losing their healthcare coverage if they did not sign a Non-Disclosure Agreement ("NDA") that was previously sent by the Huddle House executive team at the initial meeting to discuss combining Perkins and Huddle House.

29. After multiple conversations with Plaintiff's colleagues regarding their concerns and as part of Plaintiff's duties as a Human Resources Director, Plaintiff drafted email correspondence to Mr. Abt outlining the various concerns regarding the NDA and other policies sent to employees regarding the transition from Perkins to Huddle House. A true and correct copy of Plaintiff's correspondence to Mr. Abt is attached hereto as Exhibit "D."

30. Plaintiff's correspondence also inquired as to why Plaintiff's much younger and inexperienced understudy was offered a position with Huddle House over Plaintiff. Id.

31. Plaintiff's correspondence further requested that she be allowed to relocate as soon as possible to procure employment elsewhere. Plaintiff requested permission to work remotely while she procured subsequent employment and housing outside of the Orlando area.

32. Plaintiff informed Mr. Abt and other members of Huddle House's executive team that she had approximately ten (10) years left to work before she planned to retire, and she needed to maximize the time she had to secure new employment.

33. On or about October 22, 2019, Mr. Abt responded to Plaintiff's correspondence but did not respond to Plaintiff's request to work remotely or her request to relocate as soon as possible, leaving Plaintiff no choice but to stay in the

Orlando area until the last day of her employment. Plaintiff was denied the same accommodations that had been afforded to her younger colleagues.

34. Importantly, Ms. Bending, Plaintiff's younger and less experienced understudy, was allowed to work remotely from Wisconsin and continued to do so when she was chosen to remain in the position Human Resources Manager over Plaintiff.

35. Upon information and belief, Plaintiff was denied the ability to work remotely and to relocate early as retaliation for her reporting of what she considered to be serious concerns of employee intimidation during the transition process from Perkins to Huddle House.

36. On November 6, 2019, Plaintiff received a letter via United States Postal Service ("USPS") which was dated October 22, 2019 and signed by Ms. Leister stating that Plaintiff's last day of work could be anywhere from December 24, 2019, through the fourteen (14) days to follow which was in contradiction of the first letter provided to Plaintiff in September 2019. A true and correct copy of Ms. Leister's correspondence to Plaintiff is attached hereto as Exhibit "E."

37. Ms. Leister was also aware of Plaintiff's concerns regarding Huddle House's attempted intimidation of employees, and, upon belief, Ms. Leister's correspondence was further retaliation for Plaintiff's whistleblowing activities.

38. On or about November 7, 2019, Plaintiff emailed Mr. Abt informing him of the letter received from Ms. Leister. Plaintiff informed Mr. Abt that she believed Ms. Leister's correspondence was in retaliation for her previous whistleblowing activities regarding the NDAs sent to employees.

39. Plaintiff further requested that Mr. Abt provide her with a precise date for the termination of her employment to allow Plaintiff to secure subsequent employment and housing.

40. On November 10, 2019, Ms. Aho sent correspondence to Plaintiff stating that Plaintiff's employment would be terminated as of December 31, 2019.

41. On November 12, 2019, Plaintiff had a conversation with Ms. Aho regarding her concerns of retaliation from Ms. Leister and Ms. Aho averred that Ms. Leister knew nothing of the November 6, 2019, letter received by Plaintiff even though Ms. Leister's signature was on the letter.

42. At the time of the transition from Perkins to Huddle House, Plaintiff was the most experienced employee in the Human Resources Department and the only employee in that department willing to relocate to Atlanta to accommodate Huddle House's needs.

43. Despite Plaintiff's longstanding history with Perkins and her extensive experience in Human Resources, Plaintiff was terminated and denied a follow-on position with Huddle House upon the merger of the two companies.

44. Instead, Plaintiff's younger and less experienced understudy was given the position which Plaintiff held for over thirteen (13) years, despite Huddle House being fully apprised of Plaintiff's knowledge, experience, and skills.

45. Plaintiff's termination was discriminatory as it was based on her age and she was replaced by a younger employee.

46. Plaintiff was further retaliated against as a result of her reporting issues of employee intimidation and other potentially unlawful employment practices to Mr. Abt and Ms. Leister.

47. Huddle House did not have a legitimate reason to terminate Plaintiff's employment or retaliate against her in any manner.

48. Huddle House's actions are in violation of 29 U.S.C. § 623 and Fla. Stat. § 448.102.

49. As a result of Huddle House's discriminatory and retaliatory conduct, Plaintiff has been damaged, suffered emotional distress, and had no choice but to hire counsel to vindicate her rights.

50. Plaintiff has retained the undersigned legal counsel to prosecute this action on her behalf and had agreed to pay counsel a reasonable fee for their services.

51. Plaintiff is entitled to reasonable attorney's fees if she is the prevailing party in this action.

## COUNT I
## VIOLATION OF THE ADEA – 29 U.S.C. § 623

52. Plaintiff incorporates Paragraphs 1-51 by reference as if fully set forth herein.

53. Huddle House is an employer with the meaning of the ADEA.

54. Plaintiff is a member of a protected class (over forty (40) years of age).

55. Plaintiff was qualified for her position at the time of her termination.

56. Huddle House took adverse employment actions against Plaintiff, including terminating her employment without justifiable cause and replacing Plaintiff with a younger, less experienced colleague.

57. Plaintiff at all times performed her duties owed to Huddle House faithfully and in accordance with applicable standards.

58. Huddle House treated Plaintiff's younger colleague more favorably than Plaintiff due to the fact that she was significantly younger than Plaintiff.

59. Plaintiff was terminated because of her age.

60. Huddle House's conduct alleged in this Complaint was willful and intentional.

61. As a direct result of Huddle House's actions, Plaintiff has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm), all in amounts to be determined at trial.

## COUNT II
## RETALIATION - FLA. STAT. § 448.102

62. Plaintiff incorporates Paragraphs 1-51 by reference as if fully set forth herein.

63. Plaintiff objected to and refused to participate in an activity, policy, or practice of Huddle House which was in violation of a law, rule, or regulations, as set forth more fully above.

64. Plaintiff objected to Huddle House's threat and intimidation of employees relating to the NDAs and additional policies established as a result of the combining of Perkins and Huddle House.

65. As a direct and proximate result of Plaintiff's protected activity under the Florida Whistleblower Act, and the adverse employment action that Huddle House took against Plaintiff because of Plaintiff's protected activity, Plaintiff has been damaged.

66. Plaintiff's damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering and mental anguish, and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following:

a. Judgment in Plaintiff's favor and against Huddle House under all counts in this Complaint;

13

  b. Award any and all incidental and consequential damages incurred by Plaintiff as a result of Defendant's unlawful conduct;

  c. Compensatory damages, general and special;

  d. Pecuniary and non-pecuniary damages, including emotional harm;

  e. Punitive damages for Defendant's willful and intentional conduct;

  f. Attorney's fees and all other fees and costs associated with this action;

  g. Pre-judgment interest; and

  h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein so triable.

Respectfully submitted this 14th day of June 2021.

              */s/Mark L. Bonfanti*
              Mark L. Bonfanti
              Florida Bar No. 0010185
              mbonfanti@hgrslaw.com
              Jennifer K. Sniadecki
              Florida Bar No. 1010134
              jsniadecki@hgrslaw.com
              HALL, GILLIGAN
              ROBERTS & SHANLEVER LLP
              1241 Airport Road, Suite A
              Destin, Florida 32540
              Telephone: (850) 502-2004
              Facsimile: (404) 537-5555
              *Counsel for Plaintiff*